## AMENDMENT
### to the
### AGREEMENT
### between

### Premier Health Systems, Inc.
### (Premier)
### and
### McLeod Regional Medical Center of the Pee Dee, Inc.
### (MRMC)

Effective July 15, 2005 reimbursement extended to Premier by Provider will be as follows:

In-Patient Services
Out-Patient Services

REDACTED

All other provisions of the agreement will remain unchanged.

McLeod Regional Medical Center    Premier Health Systems, Inc.
of the Pee Dee, Inc.

By: _/s/ Michael P. Browning_         By: _/s/ Jeffrey W. Koenig_
    Michael P. Browning                   Jeffrey W. Koenig

It's: Senior Vice President & CFO     It's: President & CEO

Date: 7/15/2005                        Date: 8/4/05

04/23/2007 MON 12:42 FAX 8437775357 MCLEOD BUS SERVICES ☒003/010
MC ᵒᵘᵉ

Effective 03/01/00

## THIS AGREEMENT IS SUBJECT TO ARBITRATION
## PURSUANT TO SC CODE 415-48-10 ET SEQ.

### PREMIER HOSPITAL AGREEMENT

1. **PARTIES.** This AGREEMENT is between PREMIER HEALTH SYSTEMS, INC. ("PREMIER") and McLeod Regional Medical Center subscribed below ("McLeod").

2. **INTRODUCTION.** PREMIER offers managed health care services to employers, insurers, third party administrators, and private and governmental group health benefit plans and agencies through PREMIER's network of participating providers (the "NETWORK"). PREMIER and McLeod desire that McLeod become a participating NETWORK provider offering to the patients served by the NETWORK the health care services described in this AGREEMENT.

3. **DEFINITIONS.** For purposes of this AGREEMENT, the following terms shall have the following meanings:

   "AGREEMENT" means this agreement between PREMIER and McLeod.

   "COVERED PERSON" means an individual eligible for NETWORK health care services under a HEALTH BENEFIT PLAN.

   "HEALTH BENEFIT PLAN" means a contract in which PREMIER agrees to provide certain specified health care services to the individuals designated by the contract as COVERED PERSONS.

   "HEALTH BENEFIT CUSTOMER" means an entity having an active payor agreement with PREMIER the purpose of obtaining health care services for a designated group of individuals under a HEALTH BENEFIT PLAN and has agreed to provide certain financial incentives for member to use McLeod.

   "PRICING" means a fee schedule provided by McLeod to PREMIER, in such format as PREMIER may reasonably require, setting forth pricing which will be acceptable to McLeod with respect of a HEALTH BENEFIT PLAN.

   "PROVIDER PAYMENT METHODOLOGY" applicable to a particular HEALTH BENEFIT PLAN means the methodology for allocating to each participating NETWORK provider payments made by a HEALTH BENEFIT CUSTOMER in respect of such HEALTH BENEFIT PLAN.

   "PROVIDER SERVICES" means the health care services (and incidental supplies, if any) offered by McLeod to its patients from time to time.

4. **PROVIDER SERVICES.** McLeod shall make available the PROVIDER SERVICES to each COVERED PERSON in accordance with the HEALTH BENEFIT PLAN covering such COVERED PERSON so long as such HEALTH BENEFIT PLAN has been approved by McLeod in accordance with Section 4 of this AGREEMENT. The quality, availability and timeliness of PROVIDER SERVICES rendered to COVERED PERSONS shall be equivalent to PROVIDER SERVICES rendered to all other groups or classes of individuals served by McLeod. The PROVIDER SERVICES shall at all times be offered and rendered in a timely and professional manner and in accordance with (i) all applicable laws, rules and regulations of the federal, state and local governments and their respective agencies, authorities and instrumentalities; (ii) the

Rev. February 7, 2000
McLeodReg.agr
Page 1 of 7

terms and conditions of the applicable HEALTH BENEFIT PLAN; (iii) ethical and practice standards prevailing in the community where McLeod is located; and (iv) the ethical and religious standards and directives adhere to by McLeod.

5. **CONTRACTS BETWEEN PREMIER AND PAYORS.** Through its independent contracts with individual Payors, Premier will require Payors or their designated agents to:

   5.1 pay McLeod for Medically Necessary Covered Services furnished to Members in accordance with the terms of this Contract within an average of thirty (30) calendar days of receipt of claims or McLeod may choose not to accept the discount;

   5.2 agree to keep audit, claim, and patient information confidential except as necessary for the performance of this Contract and its contracts with Payors;

   5.3 be responsible for obtaining authorization as appropriate from Members for disclosure of patient information and for providing proof of authorization when medical records are requested from McLeod;

   5.4 provide identification cards to Members, which cards:

   5.4.1 clearly identify the Member as being in the Premier PPO via a logo or bold lettering;

   5.4.2 indicate where to call for prior authorization of covered services;

   5.4.3 indicate where to send billing information; and

   5.4.4 explain how to verify benefits and Member eligibility.

   5.5 provide an explanation of benefits form that specifically identifies Premier as the source of any discount.

   5.6 **Premier shall not allow a payor access to the PPO negotiated rates without an active PPO – Payor agreement. To do so shall constitute breach of agreement and McLeod will not honor the payor agreement.**

6. **COMPLIANCE WITH NETWORK REQUIREMENTS.** McLeod shall reasonably cooperate with PREMIER's NETWORK standards, rules and procedures related to referrals and service authorization, claims submission, quality assurance, utilization review, health care professional credentialling, record keeping and retention, billing, data compilation and exchange, and other matters related to administration of the NETWORK. McLeod shall allow PREMIER, during normal working hours, to inspect, audit and duplicate all books, records, accounts, and data related to this AGREEMENT or the performance of McLeod's obligations under this AGREEMENT, upon reasonably advance notice and at reasonable and customary coping costs, in accordance with provider policy. McLeod and PREMIER shall comply with all applicable privacy laws governing patients records. McLeod shall reasonably cooperate and in good faith with PREMIER's efforts to market managed health care services through the NETWORK. Without limiting the generality of the foregoing, McLeod authorizes PREMIER to include in PREMIER's advertising and promotional materials McLeod's name and descriptive material related to McLeod.

7. **PAYMENT FOR PROVIDER SERVICES AND COORDINATION OF BENEFITS.**

7.1 For all PROVIDER SERVICES provided to COVERED PERSONS under a HEALTH BENEFIT PLAN, PREMIER agrees to pay, or cause to be paid, McLeod in accordance with the PROVIDER PAYMENT METHODOLOGY, as shown on SCHEDULE B applicable to such HEALTH BENEFIT PLAN. McLeod shall not solicit, bill, or accept any payment for such services from any COVERED PERSON except for deductibles or co-payments provided for in such HEALTH BENEFIT PLAN, or for non-covered services, or if patient has written prior agreement with provider. Claims for payment shall be submitted on the UB-92 format or its successor's form and submitted within 1 year of patient's discharge.

7.2 Premier, directly or through its independent contracts with each individual Payor, will handle all coordination of benefits billings, including, but not limited to cases involving workers' compensation claims, Members covered by more than one health benefits plan, and Members who have a right to recover costs of medical services through subrogation (e.g., third-party insurance) or first-party insurance (e.g., automobile or medical).

7.3 In the event a Premier member is covered by another carrier as a secondary insurer, Physician shall be entitled to all COB revenues from the secondary insurer pertaining to that service until it has recovered the difference between its regular charge for that service and the Premier payment for that service.

7.4 In the event Premier is the secondary carrier for a member, Premier's payors shall reimburse Physician the difference, if any, between physician's regular charge for that service and the payment made by the primary insurer. The amount paid by a Premier payor shall not exceed the amount it would have paid if it were the primary carrier.

7.5 Marketing. Premier will promote the use of the Physician Group by including its name and its Physicians' names, addresses and telephone numbers in its listings of Premier Participating Providers and its educational and promotional material and by making efforts to negotiate Payor reimbursement mechanisms designed to offer financial incentives to Members to use Premier Participating Providers.

8. PROVIDER REPRESENTATIONS AND WARRANTIES. McLeod represents and warrants as follows:

   8.1 Status and Standing. If an entity, McLeod is duly organized, validly existing and in good standing under the laws of the State of residence or location.

   8.2 Authority and Power. McLeod has the legal power and authority, and all required approvals of any persons or entities, to enter into and perform its obligations under this AGREEMENT.

   8.3 Compliance with Law. McLeod (and each individual involved in rendering health care services on McLeod's behalf) is in full compliance with all licensure and other laws, rules and regulations of all federal, state and local governments, and their respective agencies, authorities and instrumentalities.

9. NON-EXCLUSIVITY Nothing in this AGREEMENT shall in any way limit or restrict McLeod's right to freely compete in all service lines and geographic areas with PREMIER and the other

participating NETWORK providers, to contract or affiliate with other networks and entities offering managed health care services and to negotiate or contract individually with any health care payor.

10. **INDEMNIFICATION.** Each party agrees to indemnify and hold harmless the other party, its officers, directors, shareholders, employees, and other agents from and against any and all claims, suits, judicial or administrative proceedings, debts, charges, costs, expenses, losses or other liabilities (including without limitation court costs and reasonable attorney fees) to the extent proximately caused by, or arising out of, any actual or alleged negligence, malpractice or other wrongful conduct of the first party.

11. **INSURANCE.** Each party shall maintain in full force and effect at all times policies of liability and malpractice insurance in such amounts, having such terms and conditions, and issued by such companies, as may be acceptable to the other Party.

12. **TERM AND TERMINATION.** This AGREEMENT shall take effect as of the date appearing on the signature page of this AGREEMENT, and shall continue in full force and effect until terminated in accordance with this Section 12. Either party may terminate this AGREEMENT without cause giving a ninety (90) day notice. Either party may terminate this contract for cause or breach of contract with a sixty (60) day notification.

13. **CONFIDENTIALITY.** Neither party shall copy, disseminate, or grant third parties access to, any and all information, data or material received from the other party which either (i) is designated as "Confidential" or "Proprietary", or (ii) the other receiving party should reasonably recognize to be confidential or proprietary in nature. PREMIER shall protect the confidentiality of patient's records according to strict professional guidelines. Upon termination of this AGREEMENT the receiving party shall return all physical embodiments of such information to the other party. Each Party's obligations under this Section 12 shall survive the termination of this AGREEMENT. Without limiting the generality of the foregoing, PREMIER and McLeod each agree not to publish, distribute or otherwise disseminate, directly or indirectly, PROVIDER'S PRICING (or other current pricing information of McLeod) to any health care provider, whether or not such provider is a NETWORK participant.

14. **RELATIONSHIP OF PARTIES.** The parties' entry into and performance under this agreement shall be as independent contractors. Nothing in this AGREEMENT shall cause either party to be the partner, joint venturer or other agent of the other party, and neither party shall hold itself out to have such a relationship with the other party.

15. **NOTICES.** All notices pursuant to this AGREEMENT shall be in writing, and deemed duly given and received upon either (i) actual receipt thereof, or (ii) three business days after being sent by United States certified mail, return receipt requested, to the party being notified at its address appearing beneath its signature below. Either party may change its address for notices by notice to the other party given in accordance with this Section 15.

16. **INTEGRATION.** This AGREEMENT constitutes the entire agreement between the parties with respect to the subject matter hereof, and supersedes any and all prior or contemporaneous agreements or understandings, whether oral or written.

17. **SEVERABILITY.** The illegality, invalidity, or unenforceability of any provision of this AGREEMENT shall not render illegal, invalid, or unenforceable any other provision hereof.

18. **AMENDMENT AND WAIVER.** This AGREEMENT may not be amended or modified, in whole or in part, except pursuant to a writing signed by both parties hereto. No right under this

AGREEMENT may be waived except pursuant to a writing signed by the party granting the waiver. The waiver of a right in any particular circumstance shall not operate as a waiver or forfeiture of such right in any subsequent circumstance. The failure to require strict compliance with any provision of this AGREEMENT, even over an extended period of time, shall not limit a party's right to require strict compliance with such provision at any future time.

19. **ASSIGNMENT.** Neither party may assign any right or obligation under this AGREEMENT without the other party's prior written consent.

20. **GOVERNING LAW.** This AGREEMENT shall be governed by, and construed in accordance with, the laws of the State of South Carolina, without reference to the conflicts of laws, provisions thereof, and by applicable Federal law.

21. **ARBITRATION.** Any and all disputes arising under this AGREEMENT must be resolved by binding arbitration conducted in Columbia, South Carolina, in accordance with the rules of the American Arbitration Association. Such arbitration shall be the sole and exclusive means of resolving such disputes and neither party shall initiate any action, suit or proceeding in any court in respect of this AGREEMENT except as may be necessary to enforce any such arbitration determination.

22. **EXECUTION, DELIVERY AND EFFECTIVE DATE.** This AGREEMENT has been duly executed and delivered by PREMIER and McLeod Regional Medical Center as of the ___1st___ day of ___March___, 20_00_.

**PREMIER HEALTH SYSTEMS, INC.**
Network
By: _____
Jeffrey W. Koenig
President and CEO

NOTICE ADDRESS:
Post Office Box 1640
Columbia, SC 29202-1640
ATTENTION: Jeffrey W. Koenig
President and CEO

**McLeod Regional Medical Center**
Hospital
By: _____
B. Bruce Barragan
Title: President and CEO

NOTICE ADDRESS:
McLeod Health
Post Office Box 100551
Florence, South Carolina 29501-0551
ATTENTION: Dudley B. Harrington
Director of Managed Care

ADDRESS DESIRED TO BE PRINTED IN PROVIDER DIRECTORY:

McLeod Regional Medical Center

555 E. Cheves Street

Florence, SC 29501

TELEPHONE
NUMBER: ( 843 ) 777-2000

FEDERAL
TAX ID NUMBER: 57-0370242

*Rev. February 7, 2000*
*McLeodReg.agr*

CONFIDENTIAL

## SCHEDULE A

### EXISTING MANAGED CARE CONTRACTS

Third Party Administrators | Insurance Companies

*[Handwritten note:]* ALL INSURERS REDACTED BUT Trustmark

Trustmark Insurance Company

## SCHEDULE B

## PRICING SCHEDULE

By virtue of this Agreement, McLeod Regional Medical Center offers the following financial arrangements to Premier Health Systems and its enrollees.

- In Patient Services
- Out Patient Services
- Diagnostic Testing
- Out Patient Therapies

REDACTED

# Amendment To
# Schedule B
# between
# McLeod Regional Medical Center and Premier Health Systems, Inc.

Effective March 1, 2000 the following changes have been made to the Premier Health Systems Hospital Agreement between **McLeod Regional Medical Center** and **Premier Health Systems, Inc.**:

Ambulance Fees                                                       REDACTED

Unless otherwise amended or changed all other items and provisions of the Agreement shall remain as originally stated.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this amendment on the day and year first above written.

McLeod Regional Medical Center                     Premier Health Systems, Inc.

By: _____                         By: _____
   J. Bruce Barragan                                    Jeffrey W. Koenig
   President and CEO                                    President and CEO

   6/28/01                                              5/18/01
   _____                              _____
   Date of Signature                                    Date of Signature


The PPO of the Carolinas

# AMENDMENT
## to the
## AGREEMENT
### between

### Premier Health Systems, Inc.
### (Premier)
### and
### McLeod Regional Medical Center of the Pee Dee, Inc.
### (MRMC)

Effective July 15, 2005 reimbursement extended to Premier by Provider will be as follows:

In-Patient Services
Out-Patient Services

REDACTED

All other provisions of the agreement will remain unchanged.

McLeod Regional Medical Center          Premier Health Systems, Inc.
of the Pee Dee, Inc.

By: _Michael P. Browning_ (signature)    By: _Jeffrey W. Koenig_ (signature)
    Michael P. Browning                      Jeffrey W. Koenig

It's:  Senior Vice President & CFO        It's:  President & CEO

Date:  7/15/2005                          Date:  8/4/05